Case number 23-3367, Eastern District of Missouri, William Becker et al. v. City of Hillsboro, Missouri. Alright, Mr. Kozlowski, we'll hear from you first. Thank you, Your Honors. This case is a takings challenge to a policy of the City of Hillsboro, Missouri to require a property owner who wishes to build a home on his property to construct infrastructure to extend the water system of the city and to dedicate permanent utility easements on their property to the benefit of the city regardless of the impact or the expense involved to that property owner. I want to begin my argument by drawing the Court's attention to the most recent Supreme Court takings case which came down since the close of the briefing in this case. And that is the case of Sheets v. County of El Dorado. It was case number 22-1074 at the Supreme Court. In Sheets, the owner, as here, sought to construct a single family residence on his property and the County of El Dorado had a policy to address a general traffic problem in the area and it imposed on the property owner a $25,000 traffic impact fee. It did this without considering the impact of that. I know the facts in Sheets and I have a question arising from Sheets. Yes, sir. Which talked a lot about Nolan and Dolan. It did. In the way in which I thought was correct beforehand before they educated me further. How did you preserve, in your view, why is the exaction issue preserved? Judge, this gets me to the question of the argument of the waiver and I do want to address that and that is as follows. First of all, I think I quoted at length in my brief the reference that I made to the argument and to the citation to Nolan and Dolan and discussing that first. But in addition to that, there is both a procedural and a substantive reason why there is not a waiver of that argument here and the issue has been preserved. The procedural issue, sorry. Waiver, the waiver is not the whole universe here. Right, okay. Waiver only doesn't preclude foreclosure. Okay. In other words, even if you didn't say we waive the argument, you might not have adequately developed the argument in the district court. You might have forfeited the argument because you had a section about a Penn Central taking. True. And in the section, you had one sentence that was sort of a backhanded reference, you might say, to exactions. Well, you understand. In the district court, I understandably said you weren't arguing it's an exaction. You were arguing it was a taking under Penn Central. Well, first of all. Why isn't that an insufficient preservation, I guess? Well, first of all, Judge, I think we need to remember the procedural posture that we're here on. This is an appeal from a summary judgment granted in favor of the city. And it was the city's burden in its motion for a summary judgment to prove that it was entitled as a matter of law to judgment, which would include proving that Nolan and Dolan was not applicable and did not. Was the word exaction in the complaint? I'm sorry, Judge? Was the word exaction in the complaint? I don't believe it was, no. Why do they have to battle the negative? Because they're filing a motion for summary judgment, and one of their burdens is to prove. They don't have to brief every issue that hasn't been raised. Judge, the pleading in this case, if you're looking to the original petition, was filed in the state court, which has a much looser and pleading standard in terms of pleading facts or legal arguments. I thought it's a given here that Missouri law is going to be the same as the federal. It is with respect to the question of whether there's an unconstitutional taking. But we're talking about the pleading that was filed in the state court and removed to federal court. Forget about procedure. Why is it preserved? What's the case law that would say this was not forfeited? Because, Your Honor, regardless of whether there were pages or paragraphs raising this issue, the district court certainly had the opportunity and, in fact, did address this issue in rather an offhanded way that there were Nolan and Dolan issues in this case. And the district court at that point should have stopped and said, whether raised specifically in the city's motion, which it was not, these are issues that must be addressed and make summary judgment inappropriate. So I think, again, it was clear based on what the district court actually considered, that the issue was there and she chose, for whatever reason, not to address it. Well, she might have been saying this could have been an argument for your client to make, but she didn't make it. I'm not going to gratuitously address it. That's what she did say. Well, on the factual basis, I think it's important to understand that this case, unlike the traditional or typical Nolan and Dolan case, there's not a permit involved. Most Nolan and Dolan cases are issues where there's been a specific permit applied for and either granted or denied with conditions. That's what she's clarifying. Nolan and Dolan does apply in this situation. I agree that it does. You should have moved for reconsideration on that ground. Well, Judge, again, I think there is a unique factual issue in this case with respect to there's no permit to be applied for at this stage of the development. So it's very much unlike the other cases. Now, the analysis of Nolan and Dolan, I agree, does apply, as well as the other categories. Counsel, in my view, the permit is not the issue here. It's the easement. That's the Nolan-Dolan issue. Okay. It's also a Penn Central issue. I agree. Indeed, it's even a Loretto issue, but I don't think it prevails. Okay. Loretto. So why does this case deserve a trial under Penn Central? It deserves a trial under Penn Central, Judge, because applying the Penn Central factors here, we have a governmental action which results in the actual physical, permanent physical taking of property, of the property owner, in which the policy, in effect, renders this property, or it chills the… No, that's not my… Assuming that Penn Central applies in this situation… Yes, sir. I think it does. Why do the Penn Central factors require a trial that the district court didn't think was needed? Because I think there are factual issues with respect to, for example, the economic impact of this policy on the property owner. Our expert testified in his report and did testify at a trial at length that the net effect of this policy is that the property becomes unsealable and must remain in its present state. And that is certainly a factual issue. In fact, the district court quarreled with the expert's opinions, but I think those are factual issues for a jury to determine and not the district judge in the first instance. So the court's reference to the evidence was simply incomplete and speculative? I think it was incomplete. I think it was incomplete, yes. And I think especially when you're talking about an expert who's going to testify on sophisticated real estate matters, those are issues that should be tried in front of a jury for their determination. And the district judge never, of course, even heard that testimony. Well, counsel, as I understand the argument is that the property, because of the policy regulations of the city, as you just said, is unsealable. That refers to an inability to market the property in separate lots. It's now been platted by the appellant into eight lots, as I understand it. Well, it's proposed to be platted into eight lots. And that's what the appellant wants to sell. And as I understand it, that's the basis for your statement that it's unsealable. We can't market it. We can't market these eight lots. Well, Judge, it's more than that. No, it is more than that. There was also testimony, and this would be developed at trial, but there was testimony in the summary judgment record that the property had been attempted to be sold as a whole, not divided into lots, without success for two years or so prior to the time when it was decided to try to sell it as individual lots. So it's not simply our making a choice. We want to sell it one way, and that is unmarketable. The property is unmarketable or was proved to be unmarketable even before that. It's when sold as a whole, and that is in the summary judgment record. Well, what I'm asking about is marketing it in these eight lots. And as I understand it, that, the platting into these eight separate lots, that came after the appellant inherited the property, and it came long after these regulations and requirements of the city were in place. No, correct on the first ground, Your Honor. It did come after the property was inherited. Actually, it's been in the name of the trust for a number of years. But not, there was only one portion of this policy imposed by the city, which occurred prior to the annexation of this property, and that was the prohibition against drilling of water wells. The other parts of the policy, which prohibits any distribution of water to any residential property at all, or which requires a connection with the city, and the policy requiring the owner to actually incur those costs, that did not occur until after the annexation back in 2000. So it is true that one portion of what I'm calling the policy, But it came before the appellant launched on this plan. Yes, that is true. To divide it into individual lots. That is true. Right. Yes, that is true. Before the decision was made to try to sell the property as individual lots. That is correct. And then getting back to marketing it as a whole, as I understand it, that's where the expert testimony comes in as to the difference in value. Well, the difference in value is based on the cost that it would of developing these properties where they would have a source of water other than being forced to tie into the city water district. Yes, sir. I would like to restore the balance of my time for a rebuttal. Thank you. Thank you for your argument. Mr. Bertels, we'll hear from you. Thank you, Your Honors. Ryan Bertels for Pepperly City of Hillsborough. The district court was correct in issuing its opinion that this was not a taking. Please speak into the microphone. Oh, I apologize, Your Honor. Sorry. The district court was correct when it ruled that this was not a taking under the Penn Central analysis. The appellants wanting to get water delivered to eight subdivided lots for free. You did say appellants. Your brief is written as though Mr. Becker is an individual property owner. And do you deny that the trust is the party that is arguing taking? I don't, Your Honor. The trust is the owner of the property. Mr. Becker is the trustee, was the individual. You don't contest the trust's standing or legal authority to do that? No, Your Honor. So your brief was just being, just casting whatever prejudice it could by individualizing the claimant. It certainly was not my intent to cause any prejudice. I think by that I was referring to Mr. Becker's testimony as trustee for the estate. Mr. Becker was the individual on behalf. You were a fed-ass trustee in your brief. I apologize, Your Honor. That was a mistake on my part. I honestly did not realize that until you pointed that out to me. The mere fact that the appellants cannot maximize their profit is not a taking. The district court opinion should be affirmed on that ground. The first issue we need to address in the brief is whether this was a per se taking. There is no dispute as the district court found that the city never physically invaded the property in any way. There is nothing in the record to support that. A permanent easement sure looks like an invasion to me, particularly after reading sheets. There is no invasion of the property, though, Your Honor. There is nothing that says the city can come on the property. Appellants can keep the land just the way it is for recreational purposes. I haven't been in a real property class for a long time, but I think an easement is an access to property. I agree it is an access to property, but that is if they want the water. There is no requirement that they have to do it. Just like it has been sitting for over 24 years right now. There is nothing dictating that the city has to come. What is the best case law for it? This easement is not a property interest under sheets. Your Honor, I will be honest. I am not familiar with the sheets case. I have not reviewed it. I understand it was issued after the briefing. I am not aware of that case. If you want supplemental briefing on that, I am more than happy to provide that. The sheets just confirms what I thought was there from the prior cases. An easement does not give you the Loretto complete taking, but it is a partial taking. It is a partial invasion of property. I believe you are referring, from what I understood from the argument about the sheets case, that it looks at the Dolan and Nolan cases, which are an exaction issue. Beyond that, it is a matter of Penn Central law. A permanent easement is an invasion. I think it potentially could be, Your Honor. It is or it isn't. I think a real property professor would have said. In the event they wanted to hook up to the city's water system, it would require an easement. Yes, I agree. Here, there is nothing requiring them to do that. The condition includes a permanent easement invasion of the property. Correct, if they choose to hook up to the city's water system. The condition is or isn't a taking. If it will be a taking, then it is not enforceable. It is enforceable, but for compensation. That is why we look at it from the Penn Central analysis, in my opinion, Your Honor. I believe the district court was correct in analyzing under the Penn Central analysis, which is the three prongs. The first analysis is the economic impact of the regulation. Here, it is undisputed that appellants never looked at what the cost would be to run just to the edge of the property. All their speculative evidence is based on what it would cost to run water to these eight proposed lots. There is nothing in the record about what it would cost to run the 228 feet. That is the real economic impact here, Your Honor, and that is not in the record because they didn't develop that below. The city never said it couldn't provide water to the appellants at their cost. There is a hookup nearby. Appellants do not even know what the cost would be to do that. To do what now? To run from the closest city hookup, which is about 228 feet away, the subdivision to the west of the property, to the edge of appellant's property. There is nothing in the record of what the cost of that would be. You are saying that would be a less expensive way to do it than what they put forth? Yes. What did they put forth? The evidence they put forth was what it would cost to run water to all eight lots of the subdivided property. From where? From that same access point? I believe that is correct, Your Honor. Yes, from that same access point. Well, if they ran it all to the edge of the property, then how would the water get to the eight subdivisions? Well, again, Your Honor, that goes to the... You are saying they wouldn't develop the eight. They wouldn't develop the eight. The reason there are these eight lots is because they want to do it. It is not anything to do with the city regulation. It is just they want to subdivide the property again to maximize their profits. There is nothing to indicate the city's taxpayers should bear the burden of the appellants maximizing their profits. So you are saying they only have, as far as the city is concerned, they have to pay for the 225 feet. And then if they want to develop the property, then they should pay for the eight extensions. Is that your point? Correct, Your Honor, just like any other developer would. The only evidence in the record on some rejection... that should be relevant. Yes, Your Honor. The takings analysis, but you don't know the number because they didn't prove it up? Correct, Your Honor. Where in the record is the city conceding that it pays? I couldn't give you an exact page number, but in our summary judgment motion, there is a testimony from Jesse Wallace, the city administrator at the time, who testified the city could run water from that 228 feet away hookup to within 20 feet of the plaintiff's property at plaintiff's cost. I can't give you the exact page number, but I do know that is... At the appellant's cost. I'm sorry, at the appellant's cost, yes. But your point is that... Just like any other developer, any other resident, they would have to bear their costs. It's not free of charge to anyone, Your Honor. This is a payment that anybody who wants to hook up to the city's water system pays. As you know, the city has to treat people fairly. And appellants are being treated just like anybody else. They're being treated just like any other developer. The city is asking them to, if they want the water, to hook up for it. If they want to run it for eight lots, just like a developer would, that's fine, but it's at their cost, just like the developer in the record. Well, you say like any other developer would. So the way it would play out then, and this is a question, if they want to develop the eight lots, they construct the pipelines to the eight lots and then ask the city to accept those pipelines? I believe that's how it would work, Your Honor. I don't think that's in the record, so I don't want to speculate too much. But that's my understanding of how it's worked in the past, is that the developer runs all the infrastructure under the ground they need and then they pay the city to connect the water at the various hookup spots. And ask the city then to accept all of that infrastructure for future maintenance? Isn't that the way it would work? I believe that's how it would work, Your Honor. Again, I don't think that's in the record, but that's my understanding. So your point back to Penn Central about economic impact is you're saying the number that they put forward you think is too high. It's not the proper number. There's a lower number that you think is the right economic impact. There's this 225 feet. Yes, and that's in the district court's opinion as well. I believe they discuss it. I can't get you an exact number because that's not in the record, but I think we can agree it would be significantly less to run water around 200 feet than to run water through eight separate lots of a 176-acre track. As far as the other Penn Central prongs for the courts to look at, the second one is the extent to which the regulation has interfered with investment-backed expectations. There's no testimony here to that at all. Appellants recently inherited the property. There's no evidence in the record of appellants spending any money at all. I don't see the relevance of that at all. Well, it's one of the prongs to look at, and there's no evidence at all of any investment-backed. Sorry. Frankly, I think this needs a Penn Central trial on that issue among others and among everything we've been talking about. In order for a trial, we need a dispute of facts, Your Honor. There's no dispute of facts in the record. We've just been talking about a dispute over the cost. Now we have a dispute over the relevance of what investment there was. Well, there's none because they inherited it, which strikes me as poppycock. I don't think there's a – there's not a material dispute about the cost to preclude summary judgment. It doesn't matter what the number is. There's still not enough of an economic impact to meet the heavy burden plaintiff must overcome here because they're being treated like any other developer. If you accept plaintiff's argument, the city would have to pay for – What Supreme Court or otherwise controlling case tells us the jury's role in a Penn Central trial? I don't – Indianola had a bench trial, as I recall. I think that is correct. I'm not aware of a jury trial on a Penn Central case because when we were – All right, so a bench trial. When is the district court a fact finder and when is it a lawmaker in a Penn Central bench trial? I think here, Your Honor, there was no material dispute of facts so the judge could act on summary judgment. I don't agree with that. Okay. The district court treated it like I've just found all the facts anybody could care about. Okay. And now I say wrong to Mr. Becker. But I don't think Indianola supports that. And your question was when would a bench trial be proper? Is that what you're – What would the court's role be in a Penn Central bench trial? When is it – Which of these issues like their costs are out of line because it's where you run the water to and so forth? I believe the court's role would be there really aren't disputed facts that would preclude summary judgment or a decision in a bench trial in favor of the city that this was not a regulatory taking under the Penn Central. Well, I suspect that your position is, well, they never established the right to develop the lots. Well, I would guess before a Penn Central bench trial that would be worked out. They would either have that permit or whatever it is, authorization to subdivide, or they wouldn't. I think that is probably correct, however – And then the trial would go forward and we'd have a rational record to deal with. I don't think that distinction that you're drawing would make a difference in the district court's analysis under the Penn Central taking analysis.  The district court had its mind made up. I think the district court's opinion is reasoned in the fact that it analyzes all three Penn Central factors quite thoroughly and taking them all together, as it must do, does not find a person – I'm sorry, a taking under the Penn Central analysis. Well, there's a weighing involved. I'm sorry, Your Honor? There is a weighing involved in a Penn Central analysis. Correct. That's underlying my question. What's the court's role in weighing the factors? I think – At the end of a trial after the court has found whatever fact disputes are relevant. I think it weighs off – In law or abuse of discretion or what standard? The standard the court looks at to analyze the three factors. To weigh them. To weigh them. I believe it's like any other balancing test. You take them all into account. One factor may – Is it a question of law or fact? I think it's a question of law, Your Honor. And the cases are clear on that? I doubt it. I believe, at least in this instance, that everything would be an issue of law. There's really not a dispute in the record. I know Mr. – I know appellants say there is, but they haven't put forward any contrary evidence. Just because they disagree with it doesn't make it a dispute of fact. They have to put contrary evidence in the record. If the city has granted them a permit to do the subdividing, and now – I don't know how – I can't tell from the briefs how other developers like the Eagle Ridge and so forth have been treated. I just can't tell, and I don't think the district court paid much attention to it. In the record which we cited in the brief, it does say that the Eagle Ridge subdivision located just to the west installed the water at the developer's cost. That is in the record. So that's akin to this situation. Mr. Becker made his deposition that the trust is acting as a developer. The city is applying the same rules and regulations to appellants as a developer as they were Eagle Ridge located just to the west as a developer. The developer bears the cost of hooking up to the city's water system. Now what if this is an exaction? I don't believe it is an exaction because it's not – Don't be involved. Come on. It's not pledge, but I don't need to reiterate that. I understand it's in the brief. I believe it's not an exaction because the appellants are not required to dedicate any portion of the property to the city or the public's use, nor are they being required to exclude others from the property. Can you answer the question, what if it's an exaction? How does that change the announcement? Your Honor, we didn't brief that at all, so I don't think it's a decision this court can reach based on the record below because it's not raised. But we can send it back for that if sheets were brought for any other reason. I agree, Your Honor. I don't believe that question you're asking was briefed below because it wasn't raised by appellants. I see that my time is up. Very well. Thank you for your argument. Thank you, Your Honors. We'll hear rebuttal. Thank you, Your Honor. The court has rightly identified, I think, many of the factual issues that were involved below that the district court perhaps didn't examine closely enough and which itself, I think, justifies. What do you mean she didn't examine them closely? Well, I'm sorry, Judge. I shouldn't have said it that way. I beg your pardon. But why do we need a trial? She examined them and she did the legal analysis under Penn Central. If she's not wrong on Penn Central, then why do we need a trial? Well, obviously, we think that the facts would support a finding for the plaintiff under Penn Central, not least of which because of the undisputed substantial impact that this policy has on the value of the property as well as the permanent physical taking involved. Those are two of the three factors. Okay. Well, I understand your arguments, but I think you're just making legal arguments that you think the district court got it wrong on applying the law. Well, I do think that, but there are also factual issues and just one raised by counsel, this idea that, well, it's really not that much of an impact because they could connect across this 200-foot stretch. Well, he wasn't raising a factual dispute. He's saying you didn't put on evidence as the plaintiff to show that cause. No, that is not correct because, in fact, we submitted portions of an expert witness report, Mr. Cooper, a qualified expert whose deposition was taken. This report was submitted that contradicts what the city's position is about that the city manager says, well, all you have to do really is go over here. So there are factual issues. That's certainly a fundamental one, I believe, that the district court chose not to find was enough to defeat summary judgment. Counselor, I've got a question before you finish. Yes, sir. You've got a plan to subdivide this tract into eight lots. Yes, sir. What if that plan was to subdivide it into 16 lots or 32 lots or 64 lots? Would the city be responsible for all that infrastructure, all that pipeline infrastructure to service all those additional lots? No, sir, it might not be. It might be a situation such as the Eagle Ridge subdivision where the density that could be developed on that property is sufficient to absorb a certain amount of those costs. But the expert said here that's not the case with this property because of the terrain and the lay of the land and so forth. And, again, that gets us into these factual issues. So, yes, there are certainly situations where a city can compel and require improvements to the public as part of a development. But they have to be reasonable and they have to be justified by the cost. I do want to point out simply this. In my memorandum below, it's true, Judge Loken, I did not use the word exaction in the state court petition that I filed. But I did use the word exaction in the memorandum below. I said, in this case, the exaction of $500,000 plus the dedication of land is totally unrelated under Nolan and Dolan. So I do want to defend myself to the extent that I used that language in the memorandum below. And this is on page 13 of my reply brief. Of a reply brief? Is it document number 37? Yes, sir. Document number 37 at page 7. And you said that was a reply brief in support of what? Well, I quoted what I had said in the memorandum in my reply brief. But it's set forth in the memorandum. You mean your response to the motion. I see. I have that. Yes. That's the one that comes. The section is headed applying the Penn Central balancing test the city makes a taking. You're arguing now that that really was an argument that there's an exaction? No, I'm saying that the issue was raised and placed before the judge. In retrospect, God knows, I wish I had spent pages using the word exaction. One page with a heading would have been. Okay. We understand the point. Thank you, Judge. Thank you to both counsel. The case is submitted and the court will file a decision in due course.